IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BONNIE JEAN MCCOY**                                            **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO. 3:13CV1010-LRA**

**OFFICER SHARP, ET AL**                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

The Plaintiff Bonnie Jean McCoy, *pro se,* and the attorneys for Defendants, Lee Thaggard (Sgt. Rush and Lauderdale County), Jason Varnado (Nurse Shelia Hamlin), and Bill Simmons (Asst. Chief Sharp[1] and the City of Meridian), appeared for a hearing before the undersigned United States Magistrate Judge on the 16th day of January, 2014, at the Jackson Federal Courthouse. The hearing was conducted under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and its progeny. Plaintiff is currently housed at the Lauderdale County Detention Facility [LCDF] in Meridian, Mississippi.

Plaintiff was granted *in forma pauperis* status by this Court by Order entered June 11, 2013 [12]. A district court may dismiss an IFP complaint as frivolous or for failure to state a claim under 28 U.S.C. § 1915 (e)(2)(B). A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A *pro se* prisoner is entitled to

---

[1]Ms. McCoy voluntarily dismissed Asst. Chief Sharp at the omnibus hearing, and he is dismissed on that basis. [39, p. 13].

develop his complaint factually before a proper frivolousness determination can be made. *See Eason v. Thaler*, 14 F.3d 8, 9-10 (5th Cir. 1994). The purpose of a *Spears* hearing is to "bring into focus the factual and legal bases of prisoners' claims." *Id.* at 9 (quoting *Spears,* 766 F.2d at 181). At this hearing, McCoy was granted an opportunity to fully explain in her own words the factual basis of her claims.

According to her sworn testimony at the hearing,[2] and the pleadings, Plaintiff has been in and out of the LCDF since she was 18 years old, and she is now 35. One year she was in jail 18 different times; she was arrested on one day and released the next day several times. [39, p. 39]. Plaintiff asserts that these Defendants know that she suffers from explosive anger disorder, schizophrenia, panic disorder, and anti-social personality disorder; she is known for fighting. When she is inside the LCDF, the jail officials intimidate her because they know that she will fight them. She fights because of her condition; it is not because she wants to fight. The jail officials take advantage of that.

Sometime in July 2012, Plaintiff was at a club called The Shed and saw Sgt. Rush (off-duty) there. She and Sgt. Rush had a verbal and physical altercation. Sgt. Rush later had charges of simple assault brought against her because of this confrontation, and Plaintiff pled guilty to those charges. Then, on the night of October 31, 2012, Plaintiff got into an altercation with her boyfriend at

---

[2]The transcript of this hearing is filed at [39].

2

the same club [39, pp. 8-10, 15-16]. Officers with the Meridian Police Department were called and arrested her, and she was taken to jail after they restrained her by using mace. She had already told Nurse Shelia and other jail personnel that she was allergic to mace, and the officers should not have maced her. She cannot name any of the officers involved, and they have not been named as defendants and/or served with process. Her purse was left at the club, and it has never been returned.

Although Sgt. Rush was not at the club when Plaintiff was maced and arrested, Plaintiff saw her the next day at the jail. Plaintiff charges that Sgt. Rush tried to make her be photographed so it would be in the weekly *Jail Times* and embarrass her. Sgt. Rush also took her shoes out of the property room.

Plaintiff contends that when she arrived at the LCDF about 1:00 a.m. on November 1, she was placed in a cell with no bathroom or mat. They did not wash the mace out of her face on the night she was arrested. She slept for two days, but when she awoke on the third day, her face was swollen and she could not see. She filled out a sick call, but Nurse Shelia did not give her proper medical assistance. Nurse Shelia charged her $10 just to wash out her eyes. Her face stayed like that for two months, and that is why she has permanent rings around her eyes, according to Plaintiff. [39, p. 10].

Assuming the facts as stated by the Plaintiff are accurate, the Court finds that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983 or the

3

United States Constitution. Because she may have been a pretrial detainee during her stay in the LCDF, McCoy had a clearly established due process right to be free from punishment; this includes the right not to be subjected to jail conditions that are imposed for the purpose of punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). In order to succeed on a claim under § 1983 alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for her "basic human needs." *Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009); *Duvall v. Dallas Cnty.,* 631 F.3d 203, 206 (5th Cir. 2011) (the conditions of a pretrial detainees's detention may be so harmful or dangerous that the conditions themselves may amount to impermissible "punishment.").

Constitutional challenges may be brought by a pretrial detainee under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission." *Id.* at 452. In this case, Plaintiff's claims focus on the episodic acts of Sgt. Rush and Nurse Shelia.[3] To prove a violation of

---

[3] Determining whether to classify a claim as a conditions-of-confinement claim or an "episodic acts" claim is not always straightforward. *See, e.g., Scott v. Moore,* 114 F.3d 51, 5354 (5th Cir. 1997) (en banc) (holding that the "episodic act" branch of the doctrine governed a detainee's claim arising out of sexual assault by a guard); *id*. at 56 (Wisdom, J., dissenting) (the assault was traceable to "regular and systematic" staffing policies that were the "antithesis of episodic").

constitutional rights in connection with an episodic act or omission case, a detainee must establish that the defendant acted with subjective deliberate indifference. *See Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc). This requires that the plaintiff establish that the defendant was actually aware of a substantial risk of serious harm to an inmate's health or safety, yet consciously disregarded the risk. *Farmer v. Brennan,* 511 U.S. 825, 827 (1994).

Neither Nurse Shelia or Sgt. Rush were there when Plaintiff was maced, and they cannot be held responsible for her injuries. The Court finds that the actions of these Defendants about which Plaintiff complains did not pose a substantial risk of serious harm to her health or safety. There is no constitutional prohibition against cross "words" or taking booking photographs or charging a detainee for medical care. Further, Nurse Shelia did render medical treatment to Plaintiff; she simply was not pleased with the care. The Eighth Amendment does prohibit conduct which evinces deliberate indifference to a serious medical need by its ban on cruel and unusual punishment, and this standard also applies to pretrial detainees. *Hare,* 74 F.3d at 646. However, Plaintiff's testimony confirms that Nurse Shelia did treat her eyes for the mace; Plaintiff simply was not pleased with being charged or with the results. Plaintiff cannot show that Nurse Shelia was deliberately indifferent to a serious medical need under these circumstances.

The Court cannot interfere with the day-to-day administration of the jails. Federal courts are not prison managers, and, ordinarily, courts accord great

deference to the internal administrative decisions of prison officials. *Gentris v. O'Connel*, 2009 WL 5195777 (W.D. La. 2009) *citing Royal v. Clark,* 447 F.2d 501 (5th Cir. 1971); *Krist v.* Smith, 439 F.2d 146 (5th Cir. 1971); and, *Haggerty v. Wainwright,* 427 F.2d 1137 (5th Cir. 1970). The fact that Plaintiff stayed for two or three days in the holding cell under the conditions she described also posed no serious risk of harm to her. No cause of action has been stated against the City of Meridian or Lauderdale County under the circumstances described in the Complaint or by Plaintiff's sworn testimony. The officers who actually maced and arrested Plaintiff on October 31, 2012, have not been named as Defendants. Even so, the use of mace does not state a constitutional claim under these stated facts.

Accepting all of Plaintiff's testimony as accurate, the actions of Defendants simply do not rise to the level of constitutional violations. The Court, having carefully considered the complaint, as augmented by the sworn testimony of Plaintiff at the hearing, as well as the applicable law, finds that McCoy's claims have no basis either in law or in fact and, therefore, are frivolous[4] and fail to state a claim on which relief may be granted. For these reasons, this action shall be

---

[4]"Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense. *See Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(I) and(ii).  Final Judgment in favor of Defendants shall be entered.

IT IS, THEREFORE, ORDERED that the Complaint is dismissed with prejudice.  A separate Final Judgment in favor of Defendants shall be entered on this date.

THIS the 7th day of April, 2014.

S/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE